MYERS *et al.* v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY, *Appellant.*

**Contract:** SHIPMENT OF STOCK: LIABILITY OF CARRIER, LIMITATION OF. Where, by the terms of a contract for the shipment of sheep, the shipper, in consideration of reduced rates, is to care for them while in transit, and attend to loading and unloading them, and assume all risks incident thereto, and of all injuries from any cause, he cannot cast the duty upon the carrier of caring for the sheep after being unloaded at their destination, although its stock yards were too small to hold them all.

*Appeal from Scotland Circuit Court.*—HON. BEN. E. TURNER, Judge.

REVERSED.

*Geo. S. Grover* for appellant.

(1) The theory of the trial court was, that appellant was not only liable as a common carrier, but also that its liability was that of a carrier of inanimate freight, and that it was bound to furnish, under the contract in evidence, a place of storage for the animals, as well as of delivery. This theory, we respectfully submit, is untenable under the testimony in this case, as well as under the special contract of shipment. Hutchinson on Carriers, sec. 75, p. 59; *Atchison v. Railroad,* 80 Mo. 213. (2) The opinions of the witnesses as to

the cause of the injury were incompetent. The witnesses should have stated the facts, leaving the jury to draw their own inferences as to cause and effect. *Koons v. Railroad*, 65 Mo. 592 ; *Railroad v. Schultz*, Advance case (Ohio) Vol. 22, May, 1886, Am. & Eng. R. R. Cases, part 3, p. 579, and cases cited. (3) The statements made by the agents of defendant, long subsequent to the alleged injury, were incompetent, being no part of the *res gestae*. *McDermott v. Railroad*, 73 Mo. 516 ; *Adams v. Railroad*, 74 Mo. 553 : *Aldridge v. Midland Blast Furnace Co.*, 78 Mo. 559 ; *Scoville v. Glassner*, 79 Mo. 449 ; *City of Chillicothe ex rel. v. Raynard*, 80 Mo. 185 ; *Devlin v. Railroad*, 87 Mo. 545. (4) The instructions given for the plaintiff were erroneous. See authorities cited, *supra*. (5) The instructions asked for by defendant and refused by the court, correctly declared the law. See authorities cited, *supra*.

*Smoot & Pettingill* for respondents.

(1) The defendant waived the condition of the contract as to time and manner of making the claim for damages, by investigating the same, and by their knowledge and general conduct. *Insurance Co. v. Kyle*, 11 Mo. 278 ; *Phelps v. Insurance Co.*, 14 Mo. 220. The condition of a policy of insurance, that an account of loss should be furnished, may be waived by the company. Such is the law when the company not only acquiesces in the delay, but requests a more particular account. *Russell & Co. v. Insurance Co.*, 55 Mo. 585. When the stock is received, protest made, and verbal notice given the yardmaster, the condition is waived. *Rice v. Railroad*, 63 Mo. 514. (2) It was the duty of defendant to have furnished plaintiffs a proper place to unload stock. And he could not have even relieved himself of this duty by contract. Lawson on Contracts' of Carriers, secs. 185, 6 and 7, p. 253.. As to live stock,

Lawson on Contracts of Carriers, sec. 137, p. 176.  By their contract they were bound to furnish stock pens. *Dunn v. Railroad*, 68 Mo. 268; *Clark v. Railroad*, 64 Mo. 440 ; *Levering v. Ins. Co.*, 42 Mo. 88.  (3) It was competent for a witness to give his opinion as to the cause of the damage. *Vail v. Railroad*, 68 Mo. 230. (4)  The declarations of agents of defendant, made in connection with the business being transacted, were competent.    See authorities cited in first proposition.

NORTON, J.—This is an action to recover damages for loss of sheep, occasioned, as the petition alleges, by the negligence of defendant.  Plaintiffs obtained judgment for $187.50, from which defendant has appealed, and, among others, assigns as error the refusal of the court to sustain a demurrer to the evidence.

It appears, from the record before us, that plaintiff shipped, under a special contract with defendant, thirteen hundred head of sheep from Memphis in this state, to Moberly.  By said contract defendant was only to transport said sheep to Moberly.  A reduced rate of freight was given, and plaintiff and three men were transported on the train to take care of the sheep.  In consideration of the reduced rate plaintiffs agreed and undertook to load and unload the sheep at their own risk and expense, and also to assume all risk of injury to the sheep from crowding upon each other, and of all other injuries from any cause.  It appears that the sheep were loaded on the night of the sixteenth of December, 1882, at Memphis, and left there the next morning, and arrived at Moberly on the night of the seventeenth, about eleven o'clock, the weather being cold.

The ultimate destination of the sheep was Texas, and the plaintiffs expected to ship the sheep from Moberly to Texas over a line of road controlled by the Missouri Pacific railroad.   The defendant had two stock

pens at Moberly, with a capacity to hold about one hundred and fifty head of sheep.  The evidence shows that at Moberly there was a transfer track where cars were placed by defendant company and the Missouri Pacific company, to facilitate the transfer from one road to the other, and that the stock pens of the Missouri Pacific railway were situated on its own line one mile and a half from the pens of defendant and this transfer track.  On the arrival of the cars containing the sheep at Moberly they were placed on this transfer track, and one of the plaintiffs who had previously gone to Moberly to arrange for the transfer, requested defendant's yardmaster to haul the sheep over on the Missouri Pacific track to the stock pens of that company.  This the yardmaster declined to do, on the ground that he had no right to use the track of the Missouri Pacific company without its consent and order authorizing him to do so ; at the same time indicating that he would comply with the request if plaintiffs would procure the consent and order of the company.  The evidence shows that plaintiffs made an ineffectual attempt to procure such consent, whereupon the yardmaster proposed to haul the cars from the transfer track to the pens of defendant in order that the stock might be unloaded, that being the place where defendant had provided facilities for unloading stock.  This offer the plaintiffs declined unless the defendant would furnish hands to herd the stock after they were unloaded, which defendant refused to do, and the sheep remained in the cars till seven or eight o'clock the next morning, when plaintiffs unloaded them at the  stock pens of defendant, seventy-five of them being found dead, their death having been occasioned, as the evidence tended to show, because of their remaining in the cars through the night.

It is clear from the contract of shipment that plaintiffs were to take charge of, and care for the sheep while in transit, and that they were charged with the duty of

unloading them at Moberly, and that they assumed all the risks incident thereto. *Atchison v. Railroad*, 80 Mo. 213. It is equally clear, that upon the arrival of the cars at Moberly plaintiffs were not hindered nor prevented from performing this duty by any act of defendant, but, on the contrary, defendant was willing either to haul the cars from the transfer track to the yards of the Missouri Pacific company, if plaintiffs would obtain the consent of that company that defendant might use its track for that purpose, or, failing in this, that it would haul the cars from the transfer track to a place in defendant's yards provided for unloading stock. The Missouri Pacific company refusing to allow its track to be used by defendant, the plaintiffs declined to unload the stock unless defendant would agree to take care of it after it was unloaded by furnishing hands to herd it. If, under the contract, it was the duty of plaintiffs to take care of the stock while in transit, and unload it, we cannot see how it can be so construed as to cast upon defendant the duty of caring for it after being unloaded. In other words, we cannot so construe the contract under which plaintiffs assumed the duty of caring for the stock while being transported, and unloading at the point to which it was to be transported, so as not only to relieve plaintiffs from the duty of receiving and caring for it after being unloaded, but to cast such duty on the defendant.

Judgment reversed. All concur, except Ray, J., absent.